ANDREW C. PONGRACZ SBN 258554
(apongracz@snw-law.com)
SEKI, NISHIMURA & WATASE, LLP
600 Wilshire Boulevard, Suite 1250
Los Angeles, California 90017
Telephone: (213) 481-2869
Facsimile:  (213) 481-2871

Attorneys for Plaintiff Matthew Rodriguez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MATTHEW RODRIGUEZ,<br><br>             Plaintiff,<br><br>      vs.<br><br>CITY OF BALDWIN PARK, a Municipal Corporation; STEVE MCLEAN, an individual; MANNY LOZANO, an individual; JEAN AYALA an individual; and DOES 1-50, inclusive;<br><br>             Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1.  42 U.S.C. 1983 – 1st AMENDMENT RETALIATION<br>2.  EMPLOYMENT DISCRIMNINATION - REFUSAL TO HIRE<br>3.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>4.  BREACH OF CONTRACT<br>5.  VIOLATION OF THE RALPH M. BROWN ACT<br>6.  FRAUD<br>7.  INTERFERENCE WITH CONTRACTUAL RELATIONS<br><br>**[JURY TRIAL DEMANDED]** |

COMPLAINT FOR DAMAGES

## **PRELIMINARY STATEMENT**

1.     This suit is brought under 42 U.S.C. section 1983 and various state laws by Plaintiff, MATTHEW RODRIGUEZ against the CITY OF BALDWIN PARK and others because of practices and patterns of pervasive unlawful activities that were discriminatory in nature and ultimately led to the deprivation of MR. RODRIGUEZ's rights. MR. RODRIGUEZ alleges that the CITY OF BALDWIN PARK interfered with his contractual employment relationship with the City of Santa Paula, retaliated against him based on activity protected by the 1st Amendment of the United States Constitution otherwise acted unlawfully towards him.

2.     As set forth in detail herein, MR. RODRIGUEZ brings claims against DEFENDANTS under the United States Constitution, California statutory and common law, and California Government Code section 12940 et seq.

3.     Plaintiff seeks compensatory and punitive damages, statutory penalties, prejudgment interest, costs of suit and attorney's fees and all available damages for the harm he suffered due to Defendants' actions.

## **JURISDICTION AND VENUE**

4.     The Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §1391.

5.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's California state law claims presented herein.

6.     Venue is proper in the Central District of California because the Defendants' unlawful conduct occurred within said district.

## **PARTIES**

7.     Plaintiff MATTHEW RODRIGUEZ ("PLAINTIFF" or "MR. RODRIGUEZ") is, and at all times relevant hereto was, an individual of Hispanic heritage over the age of 40 residing in Los Angeles County, State of California.

//
//

COMPLAINT FOR DAMAGES

8.     Defendant CITY OF BALDWIN PARK (hereinafter referred to as "BALDWIN PARK") is and at all times herein mentioned has been a public entity and an incorporated City duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant BALDWIN PARK, by and through its City Counsel and government officials, has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the City.

9.     On information and belief, defendant STEVE MCLEAN "MCLEAN") is, and at all times relevant hereto was, an employee of BALDWIN PARK residing in the City of BALDWIN PARK, State of California. MCLEAN is sued in his individual and official capacities.

10.    On information and belief, defendant MANNY LOZANO ("LOZANO") is, and at all times relevant hereto was, an employee of BALDWIN PARK residing in the City of BALDWIN PARK, State of California. LOZANO is sued in his individual and official capacities.

11.    On information and belief, defendant JEAN AYALA ("AYALA") is, and at all times relevant hereto was, an employee of BALDWIN PARK residing in the City of BALDWIN PARK, State of California. AYALA is sued in his individual and official capacities. MCLEAN, LOZANO and AYALA

12.    The true names and capacities of Defendants named as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names pursuant to *Code of Civil Procedure* section 474 and Local Rule 19-1. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.  Each reference to "DEFENDANTS" refers also to all defendants sued under fictitious names.

COMPLAINT FOR DAMAGES

13.     Plaintiff is informed, believes, and thereupon alleges that each Doe is now, and was at all times mentioned herein, the agent, principal, partner, joint venturer, employee or alter ego of the remaining DEFENDANTS, and that all of the acts and conduct alleged herein were performed within the course and scope and in the furtherance of such relationship.

14.     DEFENDANTS, and each of them, did the act and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     On or about May 21, 2021 MR. RODRIGUEZ made a written complaint to BALDWIN PARK about the conduct set forth herein to form the basis of his state law claims. From June 2021 until September 6, 2021 Defendants requested, and Plaintiff granted, several extensions of the CITY's deadline to respond to the Tort Claim. The applicable limitation periods were tolled by virtue of the pending Government Tort Claim. Thereafter, MR. RODRIGUEZ's tort claim with the CITY was deemed denied due to the inaction by the City. This lawsuit is timely following the denial date of MR. RODRIGUEZ's claim.

## FACTUAL ALLEGATIONS

16.     MR. RODRIGUEZ re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 15, inclusive.

17.     MR. RODRIGUEZ was hired by BALDWIN PARK to serve as the Assistant Chief of Police.

18.     BALDWIN PARK operates under a Manager/Council structure that is common to municipalities within California and the United States.

19.     Pursuant to the Manager/Council structure the City Manager is akin to a Chief Executive Officer at a private company.  The City Manager is appointed by the City Council to serve as chief executive and administrative officer. Under the

1  Council/Manager form of government, the Council establishes policies for
2  operations within the city, and it is the Manager's responsibility to ensure these
3  policies are carried out.

4      20.    MR. RODRIGUEZ is a retired Los Angeles County Sheriff's
5  Department ("LASD") Captain.

6      21.    On August 19, 2019, Mr. Rodriguez began work for the City of Santa
7  Paula as the Assistant Chief of Police. He was promoted in November 2019, to
8  Interim Chief of Police. Mr. Rodriguez had previously worked with former City
9  Chief of Police Steve MCLEAN ("McLean") at LASD.

10     22.    In December 2019, Mr. Rodriguez was at a farewell party for McLean
11 hosted by the City of Santa Paula where he was introduced to City police officers
12 Real, Huerta and Gonzalo Cetina.

13     23.    Mr. Rodriguez thereafter received a call from Real and City Mayor
14 Manny Lozano inquiring whether Mr. Rodriguez had interest in working for City as
15 the Assistant Chief of Police. Shortly thereafter, Mr. Rodriguez met with Mayor
16 Lozano and Real on New Year's Eve at a private event. The Assistant Chief position
17 was again discussed by Mayor Lozano.

18     24.    In January 2020, Mr. Rodriguez, Mayor Lozano and Real met for
19 breakfast in West Covina to further discuss the position. At this time, Mr. Rodriguez
20 provided Lozano recommendations on how to reorganize the police department.
21 This was due to McLean's desire for a department reorganization and prior related
22 discussions between Mr. Rodriguez and McLean. At the end of the breakfast
23 meeting Lozano assured Mr. Rodriguez he would be hired as the Assistant Chief.
24 Later in January 2020, Mr. Rodriguez had dinner with Lozano at which time Lozano
25 again gave Mr. Rodriguez assurances of his hire.

26     25.    In February 2020, McLean inexplicably called Santa Paula Human
27 Resource Director Lorena Alvarez ("Alvarez") and told her he was actively
28 recruiting Mr. Rodriguez and that Mr. Rodriguez would ultimately work for City.

COMPLAINT FOR DAMAGES

Alvarez later told Mr. Rodriguez about this conversation. Around this same time, City began a reorganization of its Police Department, including adding an Assistant Chief position, eliminating Captains, and converting Lieutenants to Commanders.

26.     Shortly after McLean's call to Santa Paula, Mr. Rodriguez was confronted by Santa Paula City Manager Dan Singer about his relationship with City. Mr. Rodriguez confirmed that he was being actively recruited, including a salary offer by City of $209,000.00 per year. Mr. Rodriguez confirmed that he would accept the position.

27.     Later in February, Chief Mclean asked to begin extrapolating City police department policies for future Sergeant and Lieutenant promotional exams. Mr. Rodriguez went to Baldwin Park PD and retrieved the policy and procedures manual from McLean and proceeded to extrapolate over 100 polices into distinct Sergeant and Lieutenant categories. Mr. Rodriguez later met McLean in Santa Clarita and gave him the policies manual back and provided a thumb drive with the extrapolated polices. Shortly thereafter, McLean announced a new promotional exam. Mr. Rodriguez's employment with Santa Paula ended on March 1, 2020.

28.     On March 2, 2020, Santa Paula Times reporter Peggy Kelly announced Mr. Rodriguez's departure and impending job at Baldwin Park as Assistant Chief. The next day McLean called and confronted Mr. Rodriguez for not telling him about the resignation. Mr. Rodriguez explained that he had been compromised at Santa Paula by his prior phone call to Alvarez, that he would not be a full-time Chief at Santa Paula, that in all likelihood he would be asked to leave quite soon, and, in any event, he was being hired by City so the article should not be an issue. McLean thereafter texted Mr. Rodriguez that "he didn't want the guys here to see the article because it could make things uncomfortable for me here. Oh well." On March 3, 2020, Mr. Rodriguez received a text message from Lozano advising that McLean was going to present a study session on creating the Assistant Chief position to the City Council and that "we need to move on this ASAP. Stay tuned." On March 12,

COMPLAINT FOR DAMAGES

2020, the agenda was written to create the Assistant Chief of Police position in City, followed by a first reading on March 18, 2020, before the City Council. On March 20, 2020, Mr. Rodriguez was contacted by Huerta and told to drop of background materials at his house in San Gabriel, which Mr. Rodriguez did. On this same day, Real reported that the Assistant Chief badge was being ordered by McLean's secretary.

29.    On March 26, 2020, Mayor Lozano called Mr. Rodriguez and said the ordinance needed to "season one month" and that Mr. Rodriguez would be hired in mid- May. This was also Mr. Rodriguez's last day of work at Santa Paula1. Mr. Rodriguez was being told by McLean and Lozano that his start date at City would be on or about April 13, 2020.

30.    On April 15, 2020, Real and Huerta visited Mr. Rodriguez's house with hiring paperwork. They also contacted Mr. Rodriguez's neighbors in furtherance of a background check. At this time Mr. Rodriguez was also provided a voucher to purchase uniforms and equipment at Keystone Uniforms in Covina and given directions to Irwindale Industrial Clinic for a medical background exam. On April 20, 2020, Lozano called Mr. Rodriguez during which he stated, "you're coming to City to work." Mr. Rodriguez was then advised by Huerta that Chuck Hookstra of Sintra Investigations in Ventura would conduct Mr. Rodriguez's formal background investigation. Mr. Rodriguez was thereafter contacted by Mr. Hookstra and an initial phone interview was conducted. On April 27, 2020, Huerta advised Mr. Rodriguez that he passed the medical exam.

31.    On May 6, 2020, the Assistant Chief of Police position was frozen due to Covid-19 budget restrictions. McLean then advised Mr. Rodriguez that he would be coming on as a Captain and would work that role until the Assistant Chief position opened. On May 8, 2020, Mr. Rodriguez went to Keystone Uniforms with the City issued voucher and began ordering City uniforms and equipment.

//

COMPLAINT FOR DAMAGES

32.     On June 4, 2020, an anonymous letter appeared and was read into the record at a City Council meeting. The letter accused Mclean of gross incompetence. McLean proceed to walk off the job shortly thereafter.

33.     On June 5, 2020, several phone calls took place between Mr. Rodriguez and Mayor Lozano who advised that given McLean's departure, Mr. Rodriguez has an opportunity to be Chief of Police.

34.     On July 2, 2020, Acting Captain Chris Hofford issued a memo addressing the police department reorganization. The memo, among other things, said the newly created Assistant Chief position was put on hold for six months.

35.     On July 30, 2020, Mr. Rodriguez had dinner with Lozano, Real, and City Council member Jean Ayala in Monrovia. Lozano again assured Mr. Rodriguez he would be coming to City, a promise supported by Ms. Ayala.

36.     In July or August 2020, Baldwin Park officers Real, Huerta, Thomas Ip and Mayor Manny Lozano attended a meeting at Mr. Rodriguez's home. Lozano repeated his prior statement that Mr. Rodriguez would be coming to the City of Baldwin Park as the Chief of Police and added that he would not rest until there was a "City of Baldwin Park vehicle parked in [Rodriguez's] driveway." This was a reference to a take-home vehicle issued to the Baldwin Park Chief of Police: a further validation of Mr. Rodriguez's position with the City.

37.     In furtherance of his hiring, the City had Mr. Rodriguez undergo a medical examination at a clinic in Irwindale. Mr. Rodriguez requested the results of the exam from the clinic but was refused, and told that the City was the owner of the record, despite the personal and medical nature of the records.

38.     On August 10, 2020, Mr. Rodriguez attempted to pick up the remainder of his new City uniforms and equipment from Keystone Uniforms. Mr. Rodriguez was informed that the voucher was not approved per Commander Hofford. Mr. Rodriguez had no idea what the issue was with the voucher.

//

COMPLAINT FOR DAMAGES

39.    On September 8, 2020, McLean called Mr. Rodriguez saying an investigator would be in contact regarding Real and Huerta and their respective roles in securing the uniform voucher. Mr. Rodriguez did later meet with an investigator regarding the uniform voucher. On September 18, 2020, Mr. Rodriguez submitted an online application for City Chief of Police. October 21, 2020, Mr. Rodriguez learned from Councilmember Ayala that he was in Band One for Chief of Police.

40.    In late January 2021, Mr. Rodriguez spoke with Maribel Medina, counsel for City regarding the McLean litigation. During this conversation she acknowledged that McLean calling Santa Paula was problematic. Per her request, Mr. Rodriguez forwarded his promotional examination notes.

41.    On February 17, 2021, Robert Lopez was appointed City Chief of Police. Mr. Rodriguez received an email from City the following day thanking him for his interest in the role. The Assistant Chief position remains frozen. Mr. Rodriguez remains unemployed, despite his best efforts to gain employment.

42.    On August 2, 2021 MR. RODRIGUEZ accepted the CITY's offer of settlement regarding the May 21, 2021 Tort Claim.

43.    On November 3, 2021 the CITY approved a long form settlement agreement.

44.    On November 11, 2021 MR. RODRIGUEZ attended a Veteran's Day celebration in Baldwin Park. MR. RODRIGUEZ is a declared candidate for the position of Los Angeles County Sheriff: an elected public office voted on by all eligible residents of Los Angeles County, including the citizens of Baldwin Park. MR. RODRIGUEZ attended the Veteran's day event for the specific purpose of meeting potential constituents and voters in furtherance of his electoral bid for Sheriff. While there, MR. RODRIGUEZ spoke with several current and former members of the Baldwin Park City Council. MR. RODRIGUEZ took photos with various performers and attendees and posted them to his campaign social media accounts.

COMPLAINT FOR DAMAGES

45.     On November 15, 2021 the CITY informed MR. RODRIGUEZ that the mayor had signed the agreement: ostensibly the final formality before the CITY returned an executed agreement and issued the settlement payment called for in the agreement.

46.     For the next two weeks, the CITY ignored all attempts at communication regarding the settlement.

47.     On or about December 1, 2021, pursuant to the terms of the settlement, the CITY requested that MR. RODRIGUEZ return his Baldwin Park police uniforms and gear that it requisitioned from its uniform supplier. MR. RODRIGUEZ complied with the request and mailed the uniforms etc. to the current Chief of Police.

48.     On December 2, 2021 the CITY disavowed its settlement with MR. RODRIGUEZ. The CITY informed MR. RODRIGUEZ that one or more city council members "did not like what they saw" at the Veteran's Day event, referencing MR. RODRIGUEZ'S political campaigning. It also indicated that MR. RODRIGUEZ's interaction with former City Council members at the event, "seemed suspicious" and "got them nervous" such that the Council revoked its approval of the CITY's settlement with MR. RODRIGUEZ.

49.     The City's repudiation of its settlement agreement with Rodriguez was made in retaliation for MR. RODRIGUEZ's political speech and politicking at the November 11, 2021 Veteran's Day event.

50.     In December 2021 and January 2022 MR. RODRIGUEZ requested all minutes and records of the various city council meetings where his Tort Claim and settlement thereof were taken up or acted upon. In response, the CITY claimed that no such records exist.

//

//

//

COMPLAINT FOR DAMAGES

**FIRST CLAIM**

**VIOLATION OF CIVIL RIGHTS**

(42 U.S.C. §1983 – 1st Amendment Retaliation)

**(AGAINST ALL DEFENDANTS AND DOES)**

51.     MR. RODRIGUEZ re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 50 inclusive.

52.     It is unlawful for a state actor to take actions that would chill the exercise of activity protected by the 1st Amendment.

53.     As described herein, MR. RODRIGUEZ has been engaged in political speech and politicking in his bid for election to public office: speech and activities protected by the first amendment.

54.     DEFENDANTS repudiated a settlement with MR. RODRIGUEZ based on his 1st Amendment protected activities.

55.     The CITY's actions against MR. RODRIGUEZ would chill a person of ordinary firmness from continuing to engage in the protected activity: silencing a candidate for public office through the threat of breaching a settlement agreement that would have compensated MR. RODRIGUEZ for the substantial harm the CITY had previously inflicted on MR. RODRIGUEZ.

56.     As a direct and proximate result of the aforementioned violations of his civil rights, MR. RODRIGUEZ has suffered and will continue to suffer:

a.     a loss of the settlement payment the CITY agreed to pay MR. RODRIGUEZ along with all other benefits of his settlement agreement with the CITY;

b. A substantial reduction in past and current income, and future income potential, injury and damage to his occupation and professional reputation in a sum as may be shown according to proof;

c.     A substantial reduction in loss of work-related benefits; and

-11-

COMPLAINT FOR DAMAGES

1    d.    Extreme   humiliation,   embarrassment,   depression,   sleeplessness,
2  emotional pain, emotional distress which culminated in physical injury and bodily
3  injury, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other
4  losses from the date of said acts all to MR. RODRIGUEZ's damage in a sum as may
5  be shown according to proof.

6    57.    The amount of MR. RODRIGUEZ's damages is not presently known
7  but he will seek leave of Court to amend this Complaint when the exact amount of
8  such damages has been ascertained or will prove the same at trial.

9    58.    The above-recited actions of Defendants were done with malice, fraud,
10  or oppression, and reckless disregard of MR. RODRIGUEZ's rights.   Defendants
11  engaged in their offensive conduct despite their awareness of the effect on MR.
12  RODRIGUEZ.   As a result of these and other actions, MR. RODRIGUEZ is entitled
13  to an award of punitive damages from all defendants except the CITY of
14  BALDWIN PARK which is immune from punitive damage awards.

15    59.    In addition, as a proximate result of the wrongful conduct of
16  DEFENDANTS, MR. RODRIGUEZ is entitled to attorney's fees and prejudgment
17  interest under 42 U.S.C. § 1983 et seq.

18                            **SECOND CLAIM**
19            **[EMPLOYMENT DISCRIMNINATION - REFUSAL TO HIRE]**
20                    **(AGAINST ALL DEFENDANTS AND DOES)**

21    60.    MR. RODRIGUEZ re-alleges and incorporates herein by reference, as
22  though set forth in full, each and every allegation contained in Paragraphs 1 through
23  59 inclusive.

24    61.    42 U.S.C. 2000-e makes it unlawful to refuse to hire someone on the
25  basis of their race, color, religion, sex, or national origin.

26    62.    In contravention of section 2000e, MR. RODRIGUEZ is informed,
27  believes, and thereupon alleges that Defendants discriminated against him on such

28

COMPLAINT FOR DAMAGES

1  an unlawful basis, or such was a motivating or determinative factor even though
2  other factors may also have contributed to Defendants' actions.

3      63.    MR. RODRIGUEZ suffered discrimination in the form of the CITY
4  refusing to finalize his hiring as the Assistant Chief of Police.

5      64.    As a direct and proximate result of such discrimination, MR.
6  RODRIGUEZ has suffered and will continue to suffer:

7      a.    A substantial reduction in past and current income, and future income
8  potential in sums as may be shown according to proof;

9      b.    A substantial injury and damage to his occupation and professional
10 reputation in a sum as may be shown according to proof;

11     c.    A substantial reduction in loss of work-related benefits; and

12     d.    Extreme humiliation, embarrassment, depression, sleeplessness,
13 emotional pain, emotional distress which culminated in physical injury and bodily
14 injury, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other
15 losses from the date of said acts all to MR. RODRIGUEZ's damage in a sum as may
16 be shown according to proof.

17     65.    The amount of MR. RODRIGUEZ's damages is not presently known
18 but he will seek leave of Court to amend this Complaint when the exact amount of
19 such damages has been ascertained or will prove the same at trial.

20     66.    The above-recited actions of Defendants were done with malice, fraud,
21 or oppression, and reckless disregard of MR. RODRIGUEZ's rights.  Defendants
22 engaged in their offensive conduct despite their awareness of the effect on MR.
23 RODRIGUEZ. He seeks punitive damages for the intentional discrimination of
24 Defendants towards him.

25     67.    In addition, as a proximate result of the wrongful conduct of
26 Defendants, MR. RODRIGUEZ is entitled to attorney's fees and prejudgment
27 interest.
28 //

COMPLAINT FOR DAMAGES

## THIRD CLAIM

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (AGAINST ALL DEFENDANTS AND DOES)

68.     MR. RODRIGUEZ re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 67 inclusive.

69.     Defendants' conduct toward MR. RODRIGUEZ, as alleged above, was outrageous and unprivileged and was done either with the intent to cause emotional distress or with reckless disregard of the probability of causing such harm.

70.     As a direct and proximate result of the aforementioned conduct, MR. RODRIGUEZ has suffered and will continue in the future to suffer: a. A  substantial reduction in past and current income, and future income potential in sums as may be shown according to proof; b. A substantial injury and damage to his occupation and professional reputation in a sum as may be shown according to proof; c. A substantial reduction in loss of work-related benefits; and d.  Extreme  humiliation, embarrassment, depression, sleeplessness, emotional pain, emotional distress which culminated in physical injury and bodily injury, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other losses from the date of said acts all to MR. RODRIGUEZ's damage in a sum as may be shown according to proof.

71.     The amount of MR. RODRIGUEZ's damages is not presently known but he will seek leave of Court to amend this Complaint when the exact amount of such damages has been ascertained or will prove the same at trial.

72.     The above-recited actions of Defendants were done with malice, fraud, or oppression, and reckless disregard of MR. RODRIGUEZ's rights.  Defendants engaged in their offensive conduct despite their awareness of the effect on MR. RODRIGUEZ.  As a result of these and other actions, MR. RODRIGUEZ is entitled to an award of punitive damages against all defendants except the CITY which may not be liable for punitive damages.

COMPLAINT FOR DAMAGES

**FOURTH CLAIM**

**BREACH OF CONTRACT**

**(AGAINST CITY OF BALDWIN PARK ONLY)**

73.    MR. RODRIGUEZ re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 72 inclusive.

74.    MR. RODRIGUEZ and BALDWIN PARK entered into a series of employment agreements, the terms of which were certain and enforceable.

75.    Moreover, implied in every California contract is a covenant of good faith and fair dealing.  This implied covenant prevents one party to a contract from acting in bad faith in the performance of its contractual obligations and prevents it from intentionally depriving the other party of the benefit he or she bargained for in the agreement.

76.    The retaliatory process described in this complaint breached the express terms of MR. RODRIGUEZ's employment contract and the implied covenant of good faith and fair dealing.

77.    MR. RODRIGUEZ fully performed all of his obligations arising under his employment Agreement, save those obligations which were excused by Defendants' breaches.  Conversely, Defendants have breached the implied covenant of good faith and fair dealing and said breaches were neither excused nor justified. MR. RODRIGUEZ's damages are a direct, natural, and foreseeable consequence of Defendants' breaches. As a direct result of Defendants' breaches, MR. RODRIGUEZ has been damaged in an amount to be determined at trial according to proof.

//
//
//
//

COMPLAINT FOR DAMAGES

**FIFTH CLAIM**

**VIOLATION OF THE BROWN ACT**

**(AGAINST CITY OF BALDWIN PARK ONLY)**

78.     MR. RODRIGUEZ re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 77 inclusive.

79.     On May 21, 2021, MR. RODRIGUEZ filed a Government Tort Claim against the CITY.

80.     MR. RODRIGUEZ alleges on information and belief that his tort claim was considered and/or acted upon at a series of city council meetings. On information and belief, the CITY council took up and acted upon the tort claim and all related matters concerning MR. RODRIGUEZ in closed session.

81.     MR. RODRIGUEZ requested from the CITY any and all minutes, records, transcripts, recordings or other documents reflecting or relating in any way to MR.RODRIGUEZ.

82.     To date, the CITY has not produced any such materials requested by MR. RODRIGUEZ.

83.     .  MR. RODRIGUEZ has been damaged are a direct, natural, and foreseeable consequence of Defendants' breaches. As a direct result of Defendants' breaches, MR. RODRIGUEZ has been damaged in an amount to be determined at trial according to proof.

84.     MR. RODRIGUEZ also seeks any and all statutory penalties, payments, reimbursements, attorney's fees, costs, etc. as permitted under the Act.

85.     To the extent that the CITY failed to keep minutes or other records of its meetings as it pertains to MR. RODRIGUEZ, MR. RODRIGUEZ seeks injunctive relief in the form of an order compelling the CITY to comply with the BROWN ACT and any other relevant municipal, county state or federal statutes, rules, policies, etc. that bear on CITY's recordkeeping and production obligations.

# SIXTH CLAIM

## FRAUD

### (AGAINST INDIVIDUAL DEFENDANTS ONLY)

86.     MR. RODRIGUEZ re-alleges and incorporates herein by reference, as though set forth in full, each and every allegation contained in Paragraphs 1 through 85 inclusive.

87.     To the extent that MCLEAN, LOZANO and AYALA made the statements or took the actions described herein without the express or implied authority of the CITY, or did so outside of their role and authority as agents of the CITY, MR. RODRIGUEZ makes the following allegations against defendants MCLEAN, LOZANO and AYALA in their individual capacities.

88.     MCLEAN, LOZANO and AYALA made a series of false statements and took actions that were intended to induce MR. RODRIGUEZ to believing that he had been hired by the CITY as its Assistant Chief of Police.

89.     MR. RODRIGUEZ reasonably relied on such statements and actions to his detriment.

90.     In relying on and as a direct and proximate result of the statements and actions of MCLEAN, LOZANO and AYALA, MR. RODRIGUEZ has suffered and will continue in the future to suffer:

a.     A substantial reduction in past and current income, and future income potential in sums as may be shown according to proof;

b.     A substantial injury and damage to his occupation and professional reputation in a sum as may be shown according to proof;

c.     A substantial reduction in loss of work-related benefits; and

d.     Extreme humiliation, embarrassment, depression, sleeplessness, emotional pain, emotional distress which culminated in physical injury and bodily injury, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other

1  losses from the date of said acts all to MR. RODRIGUEZ's damage in a sum as may

2  be shown according to proof.

3      91.   The amount of MR. RODRIGUEZ's damages is not presently known

4  but he will seek leave of Court to amend this Complaint when the exact amount of

5  such damages has been ascertained or will prove the same at trial.

6      92.   The above-recited actions of Defendants were done with malice, fraud,

7  or oppression, and reckless disregard of MR. RODRIGUEZ's rights.  Defendants

8  engaged in their offensive conduct despite their awareness of the effect on MR.

9  RODRIGUEZ.  As a result of these and other actions, MR. RODRIGUEZ is entitled

10 to an award of punitive damages against all defendants except the CITY which may

11 not be liable for punitive damages

12     93.   .  MR. RODRIGUEZ's damages are a direct, natural, and foreseeable

13 consequence of Defendants' breaches. As a direct result of Defendants' breaches,

14 MR. RODRIGUEZ has been damaged in an amount to be determined at trial

15 according to proof.

16                          **SEVENTH CLAIM**

17      **INTERFERENCE WITH CONTRACTUAL RELATIONS**

18                   **(AGAINST ALL DEFENDANTS)**

19     94.   MR. RODRIGUEZ re-alleges and incorporates herein by reference, as

20 though set forth in full, each and every allegation contained in Paragraphs 1

21 through 93 inclusive.

22     95.   MR. RODRIGUEZ had a contractual relationship with the City of

23 Santa Paula prior to being approached by the CITY about its Assistant Chief

24 position.

25     96.   Defendants' actions described herein, especially but not limited to

26 contacting SANTA PAULA about MR. RODRIGUEZ, interfered with the

27 contractual relationship between SANTA PAULA and MR. RODRIGUEZ,

28 preventing the renewal or extension of MR. RODRIGUEZ' employment.

97.     As a direct and proximate result of DEFENDANTS' interference, MR. RODRIGUEZ has suffered and will continue in the future to suffer:

a.     A substantial reduction in past and current income, and future income potential in sums as may be shown according to proof;

b.     A substantial injury and damage to his occupation and professional reputation in a sum as may be shown according to proof;

c.     A substantial reduction in loss of work-related benefits; and

d.     Extreme humiliation, embarrassment, depression, sleeplessness, emotional pain, emotional distress which culminated in physical injury and bodily injury, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other losses from the date of said acts all to MR. RODRIGUEZ's damage in a sum as may be shown according to proof.

98.     The amount of MR. RODRIGUEZ's damages is not presently known but he will seek leave of Court to amend this Complaint when the exact amount of such damages has been ascertained or will prove the same at trial.

99.     The above-recited actions of Defendants were done with malice, fraud, or oppression, and reckless disregard of MR. RODRIGUEZ's rights.  Defendants engaged in their offensive conduct despite their awareness of the effect on MR. RODRIGUEZ.  As a result of these and other actions, MR. RODRIGUEZ is entitled to an award of punitive damages against all defendants except the CITY which may not be liable for punitive damages

100.   MR. RODRIGUEZ's damages are a direct, natural, and foreseeable consequence of Defendants' breaches. As a direct result of Defendants' breaches, MR. RODRIGUEZ has been damaged in an amount to be determined at trial according to proof.

//

//

//

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   For general and compensatory damages, including prejudgment interest, in accordance with proof at time of trial;

2.   For lost salary, both front and back pay, and any other benefits to which Plaintiff would have been entitled to by reason of his employment with Defendants, according to proof;

3.   For punitive damages against all defendants except the City of BALDWIN PARK to be determined at trial where permitted;

4.   For Plaintiff's costs and attorney's fees where permitted;

5.   For such other and further relief as the Court may deem just and proper.

DATED:     February 15, 2022          SEKI, NISHIMURA & WATASE, LLP

                                                      /s/ Andrew C. Pongracz

By     _____

Andrew C. Pongracz
Counsel for Plaintiff
MATHEW RODRIGUEZ

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims and causes of action to which a jury is permitted.

DATED:     February 15, 2022     SEKI, NISHIMURA & WATASE, LLP

/s/ Andrew C. Pongracz

By    _____
Andrew C. Pongracz
Counsel for Plaintiff
MATTHEW RODRIGUEZ

COMPLAINT FOR DAMAGES